**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LOOP SPINE & SPORTS CENTER, LTD., on behalf of Plaintiff and the class members defined herein, | ) |
| Plaintiff, | ) |
| v. | ) |
| CURATIVE INSURANCE COMPANY, CURATIVE INSURANCE COMPANY OF ILLINOIS, and JOHN DOES 1-10, | ) |
| Defendants. | ) |

**COMPLAINT – CLASS ACTION**

**MATTERS COMMON TO MULTIPLE COUNTS**

**INTRODUCTION**

1. Plaintiff Loop Spine & Sports Center, Ltd., brings this action to secure redress for the actions of Defendants Curative Insurance Company, Curative Insurance Company of Illinois and John Does 1-10 in sending or causing the sending of unsolicited advertisements (Exhibit A) to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and the common law.

2. The TCPA expressly prohibits unsolicited fax advertising. Unsolicited fax advertising damages the recipients. The recipient is deprived of its paper and ink or toner and the use of its fax machine. The recipient also wastes valuable time it would have spent on something else. Unsolicited faxes prevent fax machines from receiving and sending authorized faxes, cause wear and tear on fax machines, and require labor to attempt to identify the source and purpose of the unsolicited faxes.

**PARTIES**

3. Plaintiff Loop Spine & Sports Center, Ltd. is an Illinois corporation with offices in Chicago, Illinois where it maintains a stand alone fax machine that automatically prints incoming faxes onto paper using toner/ ink..

4. Defendant Curative Insurance Company is an insurance corporation organized under Texas law with principal offices at 900 Congress Avenue, Suite 500, Austin, TX 78701. It is authorized to write insurance in Illinois. It does business under the name "Curative."

5. Defendant Curative Insurance Company issues the Curative Provider Manual, containing instructions for providers to deal with Defendants.

6. Defendant Curative Insurance Company of Illinois is an insurance corporation organized under Illinois law with principal offices at 900 Congress Avenue, Suite 500, Austin, TX 78701. It is the Illinois affiliate of Defendant Curative Insurance Company. It also uses the address 15255 South 94th Avenue, Suite 500, Orland Park, IL 60462. It is authorized to write insurance in Illinois.

7. Defendant Curative Insurance Company of Illinois also does business under the name "Curative".

8. Defendants use of "Curative" without distinguishing between the "Curative" companies has the effect of obscuring which "Curative" company engages in particular actions, making Defendant Curative Insurance Company responsible for all such actions.

9. Beginning in the fall of 2022, Defendants offered an employer-sponsored health insurance model designed with a single monthly premium, $0 copays, $0 deductibles, and $0 out-of-pocket costs for in-network care.

10. Defendants are actively signing up medical providers to support their aggressive geographic expansion. Curative has rapidly expanded its footprint beyond its initial home state of Texas into major markets like Florida, Georgia, and the Mid-Atlantic/Northeast regions. To make its insurance plans attractive to employers in these new areas, Curative must build a comprehensive

network of local doctors, specialists, and health systems.

11. Defendants seek to induce medical providers to enter into contractual relationships in which:

a. The providers receive a stream of patients who are beneficiaries of the plans administered by Curative, a valuable service;

b. In exchange, the providers furnish services at specified, discounted rates to such beneficiaries.

12. To convince medical providers to join its network, Curative pitches a friction-free partnership designed to solve traditional practice headaches. Curative providers never have to chase patients for unpaid deductibles or copays. Providers bill Curative directly for the full amount, which reduces administrative paperwork, eliminates collections, and stabilizes the practice's cash flow.

13. John Does 1-10 are other natural or artificial persons that were involved in the sending of the facsimile advertisements described below. Plaintiff does not know who they are.

**JURISDICTION AND VENUE**

14. This Court has jurisdiction under 28 U.S.C. §§1331 and 1367. *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368 (2012); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005).

15. Personal jurisdiction exists under 735 ILCS 5/2-209, in that Defendants:

a. Have committed tortious acts in Illinois by causing the transmission of unlawful communications into the state.

b. Have transacted business in Illinois.

16. Venue in this District is proper for the same reason.

17. Article III is satisfied by the receipt of "junk faxes." *Craftwood II, Inc. v. Generac Power Sys.*, 920 F.3d 479, 481 (7th Cir. 2019); *Gorss Motels, Inc. v. Lands' End, Inc.*, 997 F.3d 470, 476 (2d Cir. 2021); *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.,* 781 F.3d 1245, 1252 (11th Cir. 2015); *Gadelhak v. AT&T Servs., Inc.,* 950 F.3d 458 (7th Cir. 2020); *Melito v. Experian Mktg. Sols.,*

*Inc.*, 923 F.3d 85, 93 (2d Cir. 2019).

## FACTS

18. On September 14, 2026, Loop Spine & Sports Center, Ltd., received the unsolicited fax advertisement attached as Exhibit A on its standalone facsimile machine. It purports to come from "Curative," without further identification of which company is responsible.

19. The faxes seek to induce the recipients to enter into contractual relationships with Defendants.

20. Discovery may reveal the transmission of additional faxes as well.

21. Defendants are responsible for sending or causing the sending of the faxes.

22. Defendants derived economic benefit from the sending of the faxes.

23. Defendants either negligently or wilfully violated the rights of Plaintiff and other recipients in sending the faxes.

24. Plaintiff had no prior relationship with Defendants and had not authorized the sending of fax advertisements to Plaintiff.

25. On information and belief, the fax attached hereto was sent as part of a mass broadcasting of faxes.

26. On information and belief, Defendants have transmitted similar unsolicited fax advertisements to at least 40 other persons in Illinois.

27. There is no reasonable means for Plaintiff or other recipients of Defendants' unsolicited advertising faxes to avoid receiving illegal faxes. Fax machines must be left on and ready to receive the urgent communications authorized by their owners.

## COUNT I – TCPA

28. Plaintiff incorporates ¶¶ 1-27.

29. The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine ..." 47 U.S.C. §227(b)(1)(C).

30. The TCPA, 47 U.S.C. §227(b)(3), provides:

**Private right of action.**

**A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**

**(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**

**(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**

**(C) both such actions.**

**If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

31. Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result. Furthermore, Plaintiff's statutory right of privacy was invaded.

32. Plaintiff and each class member are entitled to statutory damages.

33. Defendants violated the TCPA even if their actions were only negligent.

34. Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

35. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with fax numbers (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent faxes by or on behalf of Defendants, or any of them, promoting their business arrangements, (d) where Defendants do not have a record showing consent or an established business relationship prior to the sending of the faxes.

36. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

37. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

a. Whether Defendants engaged in a pattern of sending unsolicited fax advertisements;

b. The manner in which Defendants compiled or obtained their list of fax numbers;

c. Whether Defendants thereby violated the TCPA;

38. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

39. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

40. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because it is not economically feasible to bring individual actions.

41. Numerous courts have certified class actions under the TCPA. *Holtzman v. Turza,* 08cv2014, 2009 U.S. Dist. LEXIS 95620, 2009 WL 3334909 (N.D.Ill. Oct. 14, 2009), *aff'd in part, rev'd in part, vacated in part,* 728 F.3d 682 (7th Cir. 2013); *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.* 2015 IL 118644, 48 N.E.3d 1060; *American Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, 757 F.3d 540, 544 (6th Cir. 2014); *In re Sandusky Wellness Center, LLC*, 570 Fed.Appx. 437, 437 (6th Cir. 2014); *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 998 (8th Cir. 2016); *Sadowski v. Med1 Online, LLC,* 07cv2973, 2008 U.S. Dist. LEXIS 41766, 2008 WL 2224892, (N.D.Ill. May 27, 2008); *CE Design Ltd. v. Cy's Crabhouse North, Inc.,* 259 F.R.D. 135 (N.D.Ill. 2009); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.,* 679 F.Supp.2d 894 (N.D.Ill. 2010); *Garrett v. Ragle Dental Laboratory, Inc.,* 10cv1315, 2010 U.S. Dist. LEXIS 108339, 2010 WL 4074379 (N.D.Ill. Oct. 12, 2010); *Hinman v. M&M Rental Center, Inc.,* 545 F.Supp.2d 802 (N.D.Ill. 2008); *G.M. Sign, Inc. v. Group C Communications, Inc.,* 08cv4521, 2010 U.S. Dist. LEXIS 17843, 2010

WL 744262 (N.D.Ill. Feb. 25, 2010); *Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642 (W.D.Wash. 2007); *Display South, Inc. v. Express Computer Supply, Inc.,* 961 So.2d 451, 455 (La.App. 2007); *Display South, Inc. v. Graphics House Sports Promotions, Inc.,* 992 So.2d 510 (La.App. 2008); *Lampkin v. GGH, Inc.,* 146 P.3d 847 (Ok.App. 2006); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.,* 203 Ariz. 94, 50 P.3d 844 (2002); *Core Funding Group, LLC v. Young,* 792 N.E.2d 547 (Ind.App. 2003); *Critchfield Physical Therapy v. Taranto Group, Inc.,* 293 Kan. 285, 263 P.3d 767 (2011); *Karen S. Little, L.L.C. v. Drury Inns, Inc.,* 306 S.W.3d 577 (Mo.App. 2010); *Lindsay Transmission, LLC v. Office Depot, Inc.,* 4:12cv221, 2013 U.S. Dist. LEXIS 9554, 2013 WL 275568 (E.D.Mo. Feb. 24, 2013).

42. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendants for:

a. Actual damages;

b. Statutory damages;

c. An injunction against the further transmission of unsolicited fax advertising;

d. Costs of suit;

e. Such other or further relief as the Court deems just and proper.

**COUNT II – ILLINOIS CONSUMER FRAUD ACT**

43. Plaintiff incorporates ¶¶ 1-27.

44. Defendants engaged in unfair acts and practices, in violation of ICFA § 2, 815 ILCS 505/2, by sending unsolicited fax advertising to Plaintiff and others.

45. Unsolicited fax advertising is contrary to the TCPA and also Illinois law. 720 ILCS 5/26-3(b) makes it a petty offense to transmit unsolicited fax advertisements to Illinois residents.

46. Defendants engaged in an unfair practice and an unfair method of competition by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to recipients

of their advertising.

47. Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.

48. Defendants engaged in such conduct in the course of trade and commerce.

49. Defendants' conduct caused recipients of their advertising to bear the cost thereof. This gave Defendants an unfair competitive advantage over businesses that advertise lawfully, such as by direct mail. For example, an advertising campaign targeting one million recipients would cost $500,000 if sent by U.S. mail but only $20,000 if done by fax broadcasting. The reason is that instead of spending $480,000 on printing and mailing his ad, the fax broadcaster misappropriates the recipients' paper and ink. "Receiving a junk fax is like getting junk mail with the postage due". Remarks of Cong. Edward Markey, 135 Cong Rec E 2549, Tuesday, July 18, 1989, 101st Cong. 1st Sess.

50. Defendants' shifting of advertising costs to Plaintiff and the class members in this manner makes such practice unfair. In addition, Defendants' conduct was contrary to public policy, as established by the TCPA and Illinois statutory and common law.

51. Defendants should be enjoined from committing similar violations in the future.

## <u>CLASS ALLEGATIONS</u>

52. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date three years prior to the filing of this action, (c) were sent faxes by or on behalf of Defendants, or any of them, promoting their business arrangements, (d) where Defendants do not have a record showing consent or an established business relationship prior to the sending of the faxes.

53. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

54. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

a. Whether Defendants engaged in a pattern of sending unsolicited fax advertisements;

b. Whether Defendants thereby engaged in unfair acts and practices, in violation of the ICFA.

55. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

56. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

57. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because it is not economically feasible to bring individual actions.

58. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendants for:

a. Actual damages;

b. An injunction against the further transmission of unsolicited fax advertising;

c. Attorney's fees, litigation expenses and costs of suit;

d. Such other or further relief as the Court deems just and proper.

## COUNT III – CONVERSION

59. Plaintiff incorporates ¶¶ 1-27.

60. By sending Plaintiff and the class members unsolicited faxes, Defendants converted to their own use ink or toner and paper belonging to Plaintiff and the class members.

61. Immediately prior to the sending of the unsolicited faxes, Plaintiff and the class

members owned and had an unqualified and immediate right to the possession of the paper and ink or toner used to print the faxes.

62. By sending the unsolicited faxes, Defendants appropriated to their own use the paper and ink or toner used to print the faxes and used them in such manner as to make them unusable. Such appropriation was wrongful and without authorization.

63. Defendants knew or should have known that such appropriation of the paper and ink or toner was wrongful and without authorization.

64. Plaintiff and the class members were deprived of the paper and ink or toner, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of receipt of the unsolicited faxes.

65. Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

66. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date five years prior to the filing of this action, (c) were sent faxes by or on behalf of Defendants, or any of them, promoting their business arrangements, (d) where Defendants do not have a record showing consent or an established business relationship prior to the sending of the faxes.

67. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

68. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

a. Whether Defendants engaged in a pattern of sending unsolicited fax advertisements;

b. Whether Defendants thereby converted the property of Plaintiff.

69. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business

practices. Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

70. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

71. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because it is not economically feasible to bring individual actions.

72. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendants for:

a. Actual damages;

b. An injunction against the further transmission of unsolicited fax advertising;

c. Costs of suit;

d. Such other or further relief as the Court deems just and proper.

**COUNT IV – TRESPASS TO CHATTELS**

73. Plaintiff incorporates ¶¶ 1-27.

74. Plaintiff and the class members were entitled to possession of the equipment they used to receive faxes.

75. Defendants' sending Plaintiff and the class members unsolicited faxes interfered with their use of the receiving equipment and constitutes a trespass to such equipment. *Chair King v. Houston Cellular*, 95cv1066, 1995 WL 1693093 at *2 (S.D. Tex. Nov. 7, 1995) (denying a motion to dismiss with respect to Plaintiffs' trespass to chattels claim for unsolicited faxes), vacated on jurisdictional grounds 131 F.3d 507 (5th Cir. 1997).

76. Defendants acted either intentionally or negligently in engaging in such conduct.

77. Plaintiff and each class member suffered damages as a result of receipt of the

unsolicited faxes.

**CLASS ALLEGATIONS**

78. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), Plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date five years prior to the filing of this action, (c) were sent faxes by or on behalf of Defendants, or any of them, promoting their business arrangements, (d) where Defendants do not have a record showing consent or an established business relationship prior to the sending of the faxes.

79. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

80. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

a. Whether Defendants engaged in a pattern of sending unsolicited fax advertisements;

b. Whether Defendants thereby committed a trespass to chattels.

81. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

82. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

83. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because it is not economically feasible to bring individual actions.

84. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the

class and against Defendants for:

a. Actual damages;

b. An injunction against the further transmission of unsolicited fax advertising;

c. Costs of suit;

d. Such other or further relief as the Court deems just and proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Dulijaza (Julie) Clark (ARDC 6273353)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603-1841
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com
Dedelman@edcombs.com
Jclark@edcombs.com

**JURY DEMAND**

Plaintiff demands trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

C:\Users\hkim\Downloads\Complaint - Loop Spine only.wpd

**DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, transmission reports, lists and all other tangible things that relate to plaintiff , the events described herein, any third party associated with sending or causing to send the junk faxes at issue and/or identifying the recipients or intended recipients of the junk faxes or fax campaign(s) at issue, and communications with the Plaintiff and the putative class members. Defendants are further requested to preserve any and all documents that show any expressed prior consent or permission to send advertising faxes and any documents that show a prior business relationship between Defendants and the recipients of the advertising faxes. Defendants shall also preserve the list of persons who have sent messages to Defendants concerning the faxes at issue. These materials are likely very relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

**NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman